Marguerite S. McNAMARA, Appellant,

v.

Lincoln T. MILLER, Sr. and The Riggs National Bank of Washington, D. C., Executors of the Estate of Ralph C. Tobin, Deceased, Appellees.

No. 14676.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 20, 1959.

Decided May 21, 1959.

Mr. Ellsworth T. Simpson, Washington, D. C., for appellant.

Mr. Paul R. Connolly, Jr., with whom Messrs. Charles C. Abeles, Christopher T. Boland, and Thomas F. Brosnan, Washington, D. C., were on the brief for appellees.

Before Mr. Justice BURTON, retired,* and WASHINGTON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

On August 5, 1957, Ralph C. Tobin died a resident of the District of Columbia. His last will and testament dated August 26, 1955, naming Lincoln T. Miller, Sr. and The Riggs National Bank (appellees) as executors, and Marguerite S. McNamara (appellant) as one of the beneficiaries, was found in a safe deposit box on August 14, 1957, at which time appellant was present and was provided with a copy of said will. Appellant was an heir at law and next of kin of decedent.

On August 24, 1957, attorneys for the executors sent a letter to appellant, which stated in material part:

"Under the requirements of local law, before a Will may be admitted to probate, all the heirs at law and next of kin of any decedent (i. e., those persons entitled to take the estate if there were no Will) must submit themselves to the jurisdiction of the Court, and be permitted to file their objections, if any, to probate of the Will. If there are no objections, there are various ways this can be accomplished without actually appearing before the Court. The simplest and most expeditious of these is to file with the Court a consent to the Probate of the Will.

"With the thought that you have no objection to the probate of your brother's Will, I have prepared an original and two copies of a form of consent, which are enclosed. If you will sign the original and one copy of the consent and have a witness

sign each, and then return them to me, there should be no delay in qualifying the Bank and Mr. Miller as executors, and thus allowing them to take steps to administer your brother's estate."

The form of consent enclosed with that letter read as follows:

"*Consent to Probate and Letters Testamentary*

"I, Marguerite Stuart McNamara, * * * having read and being fully acquainted with the contents of the Will of [Ralph C. Tobin]. * * * and having read and being familiar with the contents of the joint petition of [the executors] for the probate of said Will and for Letters Testamentary, do hereby waive citation or notice by publication, and hereby expressly waive the right to file a caveat to said Will, either before or after it is granted probate, and I hereby consent and request as follows:

"That said Will dated August 26, 1955, be admitted to probate and record as a Will of real and personal property; and

"That Letters Testamentary be granted to Lincoln T. Miller, Sr., and to The Riggs National Bank of Washington, D. C., as the executors nominated in said Will."

On September 4, 1957, appellant signed the foregoing consent and returned it to the attorneys for the executors, who filed it with the Probate Court on September 6, 1957. On the latter date, the Probate Court entered an order admitting the will to probate and granting letters testamentary to Lincoln T. Miller, Sr. and Riggs National Bank.

On February 4, 1958, appellant filed a petition for caveat. Answer to that petition was duly filed, setting forth the signing of the consent to probate and letters testamentary and asking that the caveat be dismissed. Appellant thereupon filed a motion and request for withdrawal of the consent to probate alleging,

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

among other things, that at the time of the execution of the consent the caveator did not understand the import of that document and was not advised by the parties seeking her consent that her rights would be prejudiced thereby, and further alleging that subsequent to the execution of the consent caveator had discovered evidence bearing directly upon the question of undue influence exerted by the individual co-executor and his wife.

On May 26, 1958, on motion of appellees, the court, presumably on the ground that appellant's execution of the consent form was an absolute waiver of her right to caveat the will, dismissed the caveat, and on June 26, 1958, denied appellant's motion for rehearing. This appeal followed.

## I

*Did appellant, by affixing her signature to the document entitled "Consent to Probate and Letters Testamentary," unequivocally waive her statutory right [1] to file a caveat?*

Appellees point out in their brief that the form of consent submitted to appellant follows the form recommended in "Probate Court Practice in the District of Columbia" by Professor Mersch,[2] who stated that it was designed and drafted purposely to avoid the ruling in Bowen v. Howenstein, 1913, 39 App.D.C. 585.[3] Appellees argue that by the execution of the recommended form, which contains the phrase "and hereby expressly waive the right to file a caveat," one unequivocally and finally waives his right to file a future caveat.

The form, however, is not novel. A similar form was included in the 1924 edition of Taylor[4] and Baer's "Probate Forms and Procedure." In discussing the effect of a waiver similar to that involved herein, the authors stated:

"The binding force of the waiver of right to caveat included in the above form depends on the general principles of contracts and estoppel, and *is inserted as a matter of convenience.*" [Emphasis supplied.]

■■ We have no case law on the point in the District of Columbia. We think, however, that the rule is that a waiver, to be binding, must either be based on estoppel or founded upon consideration. To affirm the order of the District Court dismissing appellant's caveat, one of the following conditions must be evidenced:

1. Appellant's waiver of right to file a caveat was founded upon *consideration;*

2. Appellant's waiver of right to file a caveat constituted an *estoppel;* or

3. Appellant's waiver of right to file a caveat constituted a *judicial admission.*

*Was the waiver involved herein supported by consideration?*

The principle that a waiver, to be operative, must be supported by an agreement founded on a valuable consideration is well settled.[5]

Appellees argue that in this case the existence of consideration may be supported in two ways, namely, by the bene-

1. § 19-309, D.C.Code (1951).

2. Professor Mersch was for many years a Deputy Register of Wills for the District of Columbia.

3. This case held that a consent to probate filed in that case was nothing more than a voluntary appearance, which would not defeat the right to file a caveat. The consent to probate in that case did not contain a waiver of the right to file a caveat.

4. Dr. William Clark Taylor also was for many years a Deputy Register of Wills for the District of Columbia.

5. Hunter Milling Co. v. Koch, 10 Cir., 1936, 82 F.2d 735; Moss v. Aetna Life Ins. Co., 6 Cir., 1934, 73 F.2d 339; Victor Products Corp. v. Yates-American Mach. Co., 4 Cir., 1932, 54 F.2d 1062; Reynolds v. Detroit Fidelity & Surety Co., 6 Cir., 1927, 19 F.2d 110; United Firemen's Ins. Co. v. Thomas, 7 Cir., 1897, 82 F. 406, 47 L.R.A. 450. Contra: St. Louis Fire & Marine Ins. Co. v. Witney, D.C.M.D.Pa.1951, 96 F.Supp. 555; Globe Indemnity Co. v. Cohen, 3 Cir., 1939, 106 F.2d 687.

fit conferred on appellant and by the detriment incurred by the executors.

As to the benefit conferred on appellant, appellees argue that by waiving her right to caveat appellant brought about a more "expeditious and inexpensive administration of [the] estate" and thus, being one of the residuary beneficiaries, she was benefited thereby. However, appellees lose sight of the fact that there would have been no effect upon the expedition or expense of administering the estate had appellant not executed the form waiving her right to caveat (as distinguished from the waiver of her appearance). A waiver of right to caveat is in no way a prerequisite to the probate of a will, and a refusal to sign such a waiver would not be justification for an executor to delay carrying out his duties.

With respect to the detriment incurred by the executors, appellees argue that, by consenting to serve, an executor incurs legal detriment since there is no duty upon him to serve in his nominated capacity. In effect, appellees intimate that the executors' acceptance was made in reliance on appellant's waiver of the right to caveat. No evidence was submitted to substantiate this contention. On the contrary, it is more logical to conclude that the individual executor's acceptance, due to the fact that he was the primary beneficiary under the will, was motivated by personal consideration. So far as the corporate executor is concerned, it makes no definite statement that it would not have served had it known that a caveat would be filed.

It should also be noted that the executors had filed their petition for probate and letters testamentary with the court some six days before appellant signed the consent form, thus indicating that appellees' acceptance was not made in reliance upon appellant's waiver of right to file a caveat.

*Did appellant's waiver of her right to file a caveat constitute an estoppel?*

■ The proper function of estoppel *in pais* is the prevention of fraud, actual or constructive,[6] and the doctrine should always be so applied as to promote the ends of justice and operate as a shield, never as a sword.[7] Fraud, in this sense, comprises all acts, omissions and concealments involving a breach of legal or equitable duty or confidence, and resulting in damage to another. In the case before us there is no indication whatsoever of any violation or breach of duty or confidence, nor has any damage been demonstrated.

In support of their view that estoppel should lie, appellees rely on two cases, Langhirt v. Hicks, 1927, 153 Md. 31, 137 A. 482, and Reichard v. Izer, 1902, 95 Md. 451, 52 A. 592.

The case of Langhirt v. Hicks is clearly distinguishable from the one before us. In that case, the appellee filed a caveat to the will prior to probate. She subsequently withdrew the notice of caveat and prayed that the will be admitted to probate. The will was duly probated and, under the will, appellee was named executrix. After serving fifteen months in this capacity, appellee resigned her position and, on the same day, filed a caveat to the will. In its opinion, the court stated:

"One, who accepts the position of executor (in which it is his duty to defend the will against caveat * *) and holds that position for 15 months, should not be permitted, on the very day he is relieved of the duties of the office, to attack the will without alleging in his petition facts which explain the apparent inconsistency, and the proof of these facts should be preliminary to the granting of issues bearing on the

6. Insurance Co. v. Mowry, 1877, 96 U.S. 544, 24 L.Ed. 674; Holterman v. Poynter, 1935, 361 Ill. 617, 198 N.E. 723, 101 A.L.R. 842; McLearn v. Hill, 1931, 276 Mass. 519, 177 N.E. 617, 77 A.L.R. 1039;

Wheaton v. North British & Mercantile Ins. Co., 1888, 76 Cal. 415, 18 P. 758.

7. Dickerson v. Colgrove, 1879, 100 U.S. 578, 25 L.Ed. 618.

validity of the will." 137 A. at page 483.

The action of the appellee in Langhirt was clearly improper. It could be plausibly argued in that case that appellee's action was an attempt to perpetrate a fraud upon the estate, for one can not be said to have clean hands where she acts as a fiduciary for fifteen months and then, on the very day of her resignation, takes a diametrically opposite position and becomes an adversary. Also, in Langhirt, there was an actual caveat and a withdrawal thereof, which could well have constituted a judicial admission. That is not the situation before us.

The case of Reichard v. Izer is also distinguishable. There, two heirs filed a caveat to the will on the usual grounds of fraud, undue influence, etc. The remaining five heirs filed a petition protesting against the caveat, stating that upon their personal knowledge the allegations in the caveat were untrue, and praying that the administration of the estate be continued without further delay or interference. The caveat was dismissed and, subsequently, three of the five heirs who had protested filed their own caveat on the identical grounds of the original caveat, which grounds they had previously stated to be untrue. The court entertained the caveat of these three heirs but was reversed on appeal, the appellate court stating:

"It may be that, if these appellees had not taken the position they did with reference to the first caveat filed, those caveators would have had all the questions now raised finally determined, and thus have put an end to such litigation. It is a great injustice to those desirous of or interested in having the will sustained to thus postpone the final disposition of the case." 52 A. at page 594.

In Reichard it is apparent that, by their own positive acts, appellees misled the court and the beneficiaries, to the latters' detriment. In the case before us neither the court nor the beneficiaries, nor the executors, were actually misled. The issues which appellant presented in her caveat were not before the court when the consent was signed; nor did appellant deny any claims which she is now asserting.

Since appellees fail to demonstrate that damage would have resulted to them had the caveat been entertained, this particular defense must fail.

*Did appellant's waiver of her right to file a caveat constitute a judicial admission?*

The vital feature of a judicial admission is conceded to be its conclusiveness upon the party making it. Any fact whatever may be the subject of an admission, provided only that the fact does not require the court to violate those rules of public policy which even a contract could not override or displace.[8]

The extent to which admissions have been applied is well illustrated in Matter of New York, Lackawanna and Western R. Co., 1885, 98 N.Y. 447, 453, wherein it is stated:

"Parties by their stipulations [admissions] * * * may stipulate away statutory, and even constitutional rights * * *. [A]nd all such stipulations not unreasonable, not against good morals, or sound public policy, have been and will be enforced * * *."

It is of the nature of an admission, plainly, that it be by intention an act of waiver relating to the opponent's proof of the fact, and not merely a statement of assertion or concession made for some independent purpose.[9] Judicial admissions are ordinarily made after issue joined or trial begun.

In the case before us, appellant's act of signing the consent to probate and letters testamentary clearly was a judi-

8. Wigmore, Evidence § 2590 (3d ed. 1940).

9. Alamo v. Del Rosaria, 1938, 69 App. D.C. 47, 98 F.2d 328.

cial admission with respect to the waiving of citation or notice by publication, for its whole purpose was to relieve the statutory burden upon the estate of the deceased to obtain jurisdiction of the heirs at law and next of kin. However, as regards the waiver of right to file a caveat, this was a statement of assertion or concession made for an independent purpose, thus not coming within the requirements of a judicial admission insofar as any issue pending before the court was concerned. Here there was no issue to which judicial admission could apply.

## II

To sum up, we find that appellant's waiver of right to file a caveat was not founded on consideration and that there was no estoppel and no judicial admission. We find nothing in the circumstances of this case which would constitute any bar to appellant's attempt to withdraw her waiver. The letter of August 24, 1957, quoted above, sent to appellant by the attorneys for the executors, certainly gave her no warning that the document she was asked to sign was anything but a consent to probate. Nothing in the letter or in the title of the enclosed document served notice on her that she was being asked to sign not only a consent to probate but also a waiver of the right to file a caveat. No claim is made by appellant that any fraud or overreaching was practiced in the obtaining of the consent to probate, and we find none. We have no doubt that there may be cases in which a person desiring to withdraw a waiver of caveat might be required to show good cause why such a withdrawal should be permitted. Cf. Langhirt v. Hicks, supra; Reichard v. Izer, supra. On the record before us, and having regard to all the circumstances, we cannot say that this is such a case.

For these reasons the order of May 26, 1958, dismissing appellant's petition for caveat will be reversed and the case will be remanded to the District Court with instructions to enter the proposed order framing issues submitted by appellant on February 27, 1958, and to cause the is-

sues so framed to be tried before a jury, unless appellees are able to produce evidence as to detriment suffered by them other than that urged here.

So ordered.